Filed 9/28/20  P. v. Tidmore CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHEDRICK TIDMORE,<br><br>    Defendant and Appellant. | B290325<br><br>Los Angeles County<br>Super. Ct. No. NA102806 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jesus (Jesse) I. Rodriguez, Judge. Reversed and remanded with instructions.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted appellant and defendant Shedrick Tidmore of driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a); count one) and dissuading a witness from reporting a crime (Pen. Code, § 136.1, subd. (b)(1); count two).[1] The jury also found true the allegation that Tidmore dissuaded the witness for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(4).) Based on the gang enhancement, the trial court sentenced Tidmore to an indeterminate term of life imprisonment with a seven-year minimum on count two. The court sentenced him to a concurrent three-year term on count one.

On appeal, Tidmore raises two arguments: (1) the indeterminate life sentence imposed on count two must be reversed because the trial court prejudicially erred by failing to instruct the jury that it was required to find the dissuasion of the witness was accompanied by an express or implied threat of force or violence; and (2) section 1001.36 applies to him retroactively, and his case should be remanded for a mental health hearing. We agree with both arguments. We vacate the sentence imposed on count two. We also conditionally reverse the judgment and remand the case to the trial court with instructions to determine whether Tidmore is eligible for mental health diversion. If the court does not grant diversion, or if the court grants diversion but later determines the criminal proceedings should be reinstated, the court shall reinstate Tidmore's convictions and resentence him in a manner consistent with this opinion.

---

1    All undesignated statutory references are to the Penal Code.

2

## PROCEDURAL BACKGROUND

On October 9, 2015, the Los Angeles County District Attorney ("District Attorney") filed a complaint charging Tidmore with committing various crimes. Less than two weeks later, defense counsel declared a doubt as to Tidmore's competency under section 1368, and the case was transferred to mental health court. The court found Tidmore incompetent in November 2015 and committed him to the Department of Mental Health for placement at Metropolitan State Hospital. The court found him competent on March 8, 2016.

On August 5, 2016, the District Attorney filed an information charging Tidmore with driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a); count one) and dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count two). The information further alleged he committed count two for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(4).)[2]

The jury found Tidmore guilty of both counts and found the gang allegation true. The court sentenced him to an

_____

2     Tidmore's attorney again declared a doubt about his competency on September 16, 2016. The court again suspended criminal proceedings under section 1368 and set the matter for a competency hearing. On the date set for the competency hearing, Tidmore attacked his attorney and threatened a bailiff. At a later hearing, through new counsel, Tidmore waived his right to a jury for the competency hearing, and the trial court found him competent and reinstated criminal proceedings.

indeterminate seven-year to life sentence on count two and a concurrent upper determinate term of three years on count one.[3]

Tidmore timely appealed.

## FACTUAL BACKGROUND

### I. Car theft and Tidmore's encounter with C.C.

At around 9:40 on the evening of October 6, 2015, an employee of Green Trucking, LLC saw someone steal two Dodge Ram trucks from his employer's lot in Paramount. He called the police.

At approximately 11:30 the following evening, Tidmore was driving one of the stolen trucks when he crashed into a Honda Civic parked in front of a house in Long Beach. The Civic belonged to C.C., who lived in the house. C.C. came out of the house and approached Tidmore.[4]

Tidmore apologized to C.C. for crashing into his car and offered to pay for the damages. Tidmore told C.C. he was an active member of the Insane Crips. C.C. felt intimidated and very nervous. He believed that if he called the police, he could be threatened, beaten up, or suffer retaliation from the gang.

---

3      Defense counsel submitted materials under *People v. Franklin* (2016) 63 Cal.4th 261 because Tidmore was 18 when he committed the offenses.

4      At trial, C.C. testified he did not recognize Tidmore as the man he had seen that night. C.C.'s brother, who was also there that night, similarly testified he did not recognize Tidmore. Long Beach Police Officer Kevin Skeen testified that when he arrived at the scene, Tidmore was standing next to the truck and speaking with C.C.

4

Officer Kevin Skeen arrived approximately 30 minutes later. C.C. told Officer Skeen he felt Tidmore was trying to intimidate him with possible violence or retaliation in order to prevent him from reporting the incident to the police. As C.C. spoke with Officer Skeen, Tidmore began walking away. Officer Skeen asked Tidmore to stop. Tidmore replied he had not been driving the truck and was going home. Officer Skeen began walking after Tidmore and told him he needed to stay and help with the report or it would be a hit and run. Tidmore began walking faster. Officer Skeen radioed other officers, and they detained Tidmore. Officer Skeen ran the truck's information and determined it had been reported stolen.

The following day, Long Beach Police Detective Bruce Roberson spoke with C.C., who said Tidmore had told him not to call the police because he was an Insane Crip and had friends who lived up the street. Tidmore also told C.C. that if he called the police, he would "have somebody come by and take care of [C.C.]."

## II. Tidmore's recorded phone call from jail

On October 9, 2015, Detective Roberson obtained a recording of phone calls Tidmore made from jail. In one of the calls, which was played for the jury, Tidmore told someone named Quan he was in jail because of a hit and run. He told Quan C.C. had called the police on him, and he gave C.C.'s address to Quan. Quan asked Tidmore what kind of car C.C owned, and Tidmore told him it was a Honda Civic. Quan replied: "All right. Say no more. That's all I need to know." Tidmore told Quan: "Find [him] for me, and tell [him] he better not go . . . ." Tidmore also said: "Post by his car, post by his house . . . ."

5

Believing C.C. and his family's lives were in jeopardy, Detective Roberson called C.C. and told him about the phone call.

### III.   Gang evidence

Based on a previous encounter from 2014, Officer Jason Lehman testified Tidmore was an active member of the Insane Crips criminal street gang. Officer Gavin Purdy testified as the People's gang expert. He testified the Insane Crips gang has approximately 700 to 800 members. The gang's primary activities include robbery, burglary, grand theft auto, prostitution, narcotics sales, assault with a deadly weapon, unlawful firearm possession, homicide, and witness intimidation.[5]

C.C.'s home is located within Insane Crips gang territory. When asked about a hypothetical scenario with facts analogous to the ones presented in Tidmore's case, Officer Purdy opined the individual would have driven the stolen truck and dissuaded the witness from reporting the crime for the benefit of and to further and promote the gang. He also testified the Insane Crips gang has a reputation for retaliating and using violence against individuals who cooperate with the police.

---

5    Officer Purdy also testified two Insane Crip members were convicted of crimes enumerated in section 186.22, subdivision (e) based on incidents that occurred in 2015 and 2016. The People introduced court dockets supporting this testimony.

# DISCUSSION

## I. **Tidmore's life sentence**

Tidmore first argues the indeterminate life sentence imposed on count two must be reversed because the trial court prejudicially erred by failing to instruct the jury that it was required to find Tidmore's dissuasion of C.C. was accompanied by an express or implied threat of force or violence. In support of his argument, Tidmore relies primarily on two cases: *People v. Lopez* (2012) 208 Cal.App.4th 1049 (*Lopez*) and *People v. Anaya* (2013) 221 Cal.App.4th 252 (*Anaya*). The Attorney General agrees the court erred by not instructing on the threat element of the offense, but argues the error was harmless beyond a reasonable doubt because, based on the evidence presented at trial, no rational jury could have found the missing element unproven.

We conclude the Fifth, Sixth and Fourteenth Amendments and the California Constitution prohibited the trial court from imposing a life sentence when a necessary element was not found true by the jury beyond a reasonable doubt. (See *Apprendi v. New Jersey* (2000) 530 U.S. 466, 476, 490, 500 [120 S.Ct. 2348, 147 L.Ed. 2d 435] (*Apprendi*); *People v. Flood* (1998) 18 Cal.4th 470, 479-480.) We reject the Attorney General's argument that the error was harmless. The trial court sentenced Tidmore as though he was convicted of violating section 136.1, subdivision (c)(1). Tidmore was never charged with violating that subdivision, the jury was never instructed on all the elements necessary to convict him of the offense set forth therein, and consequently, the jury never convicted him of committing that offense. Under these circumstances, it would be fundamentally unfair to affirm the punishment imposed. We vacate the sentence on count two and remand the matter to the trial court for resentencing.

7

## A. Background

Tidmore was charged in count two with dissuading a witness from reporting a crime in violation of section 136.1, subdivision (b)(1).[6] The information alleged the offense was committed for the benefit of or in association with a criminal street gang under section 186.22, subdivision (b)(4). The court instructed the jury on the elements of section 136.1, subdivision (b)(1) using CALCRIM 2622.[7] Tidmore was not charged with

---

6    Section 136.1, subdivision (b)(1) provides: "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

7    The court instructed the jury as follows: "The defendant is charged in Count 2 with intimidating a witness in violation of Penal Code section 136.1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant maliciously tried to prevent or tried to discourage [C.C.] from making a report that someone else was a victim of a crime to any peace officer or state or local law enforcement officer; [¶] 2. [C.C.] was a witness; [¶] AND [¶] 3. The defendant knew he was trying to prevent or trying to discourage [C.C.] from making a report that someone else was a victim of a crime to any peace officer or state or local law enforcement officer and intended to do so. [¶] A person acts *maliciously* when he unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice. [¶] As used here, *witness* means

8

violating section 136.1, subdivision (c)(1).[8] While section 136.1, subdivision (c)(1) includes, as an element of the offense, either the use of force or an express or implied threat of force or violence, section 136.1, subdivion (b)(1) does not. Consequently, the court did not instruct the jury to determine whether the dissuasion of C.C was accompanied by an express or implied threat of force or violence. (See § 136.1, subd. (c)(1); CALCRIM 2623.)[9] The jury found Tidmore guilty of count two and found the

someone or a person the defendant reasonably believed to be someone who knows about the existence or nonexistence of facts relating to a crime. [¶] It is not a defense that the defendant was not successful in preventing or discouraging the witness. [¶] It is not a defense that no one was actually physically injured or otherwise intimidated."

8        Section 136.1, subdivision (c)(1) provides: "Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person."

9        The bench notes for CALCRIM No. 2623, the instruction given when a defendant is charged with violating section 136.1, subdivision (c), state: "If the defendant is charged with a felony based on Penal Code section 136.1(c), the court has a sua sponte duty to instruct on the alleged sentencing factor. This instruction must be given with CALCRIM No. 2622 . . . ." (Bold type omitted.) Subdivisions 136.1(c)(1) through (c)(4) each provide different sentencing factors.

9

gang allegation true.[10] The court imposed an indeterminate term of life imprisonment with a seven-year minimum under section 186.22, subdivision (b)(4).

### B. Applicable law

Section 186.22, subdivision (b) deals with increased terms of imprisonment when the jury finds a crime is committed for the benefit of a criminal street gang. Section 186.22, subdivision (b)(4) requires the trial court to impose a term of life in prison for various underlying offenses, including "threats to victim and witnesses, as defined in Section 136.1." (§ 186.22, subd. (b)(4)(C).)[11]

Section 136.1, subdivision (b)(1), provides that anyone who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from reporting that crime is guilty of an offense that may be punished as either a misdemeanor or a felony. Section 136.1, subdivision (c)(1) provides that every person who commits an act described in subdivision (b) where the act is accompanied by force or by an express or implied threat of force or violence is guilty of a felony punishable by imprisonment for two, three, or four years.

---

10      The prosecution's theory was C.C. had become aware Tidmore had stolen the car or there was some other similar criminal activity afoot, and Tidmore sought to dissuade C.C. from revealing that to the police.

11      The statute requires the trial court to impose the greater of two alternatives: (1) the term that would otherwise be imposed under section 1170 for the underlying conviction, including any enhancements; or (2) the seven-year minimum life term. (See § 186.22, subd. (b)(4)(A), (C).)

"The Sixth and Fourteenth Amendments to the United States Constitution preclude a trial court from imposing a sentence above the statutory maximum based on a fact . . . not found to be true by a jury. (*Cunningham v. California* (2007) 549 U.S. 270, 274–275 [166 L. Ed. 2d 856, 127 S. Ct. 856]; *Blakely v. Washington* (2004) 542 U.S. 296, 303–304 [159 L. Ed. 2d 403, 124 S. Ct. 2531]; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L. Ed. 2d 435, 120 S. Ct. 2348].) Whether a defendant used an express or implied threat of force when attempting to dissuade a witness from testifying is a question of fact that subjects the defendant to a greater sentence. Accordingly, *Apprendi* and its progeny require the jury find this fact true beyond a reasonable doubt." (*Lopez*, *supra*, 208 Cal.App.4th at p. 1064.)

### C. Analysis

Applying the above-stated principles, we conclude the trial court erred by imposing a sentence of seven years to life on count two. We agree with Tidmore that *Lopez* and *Anaya* warrant reversal. As discussed above, the information charged Tidmore with violating section 136.1, subdivision (b)(1). The information did not charge him with using an express or implied threat of force, the instructions did not inform the jury it must find he used an express or implied threat of force, and the jury never made that finding. "Only subdivision (c)(1) of section 136.1 refers to the use of an implied or express threat. Therefore, the plain meaning of section 186.22, subdivision (b)(4)(C) is that a seven-year-to-life sentence can be imposed only if the jury convicts the defendant of attempting to dissuade a witness by use of an implied or express threat of force pursuant to section 136.1, subdivision (c)(1)." (*Lopez, supra*, 208 Cal.App.4th at p. 1065; see

*Anaya, supra*, 221 Cal.App.4th at p. 270, quoting *Lopez*.) "[T]he trial court erred in imposing a sentence of seven years to life pursuant to section 186.22, subdivision (b)(4)(C) because the section did not apply to the crime of which [Tidmore] was convicted and because the sentence was based on a fact not found true by the jury." (*Lopez, supra*, 208 Cal.App.4th at p. 1065; see *Anaya, supra*, 221 Cal.App.4th at p. 271; see also *People v. Pettie* (2017) 16 Cal.App.5th 23, 40, 41, 56-57.)

The parties disagree over whether the error was prejudicial. Specifically, Tidmore argues the prosecution cannot show the error was harmless beyond a reasonable doubt because the record does not show he threatened C.C. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705].) The Attorney General argues the error was harmless beyond a reasonable doubt because the record shows Tidmore did threaten C.C. Because the sentence the trial court imposed was statutorily unauthorized as a matter of law, we agree with *Lopez* and *Anaya* that the proper remedy is a remand so the trial court can impose a lawful sentence. It would be fundamentally unfair to punish Tidmore as though he were charged with an offense that was never charged and the jury did not convict him of committing. (See *Washington v. Recuenco* (2006) 548 U.S. 212, 218-219 [126 S.Ct. 2546, 165 L.Ed.2d 466] (*Recuenco*) [reversal is required where the error "'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' [Citation.]"].)

In support of the argument that a harmless error analysis applies, the Attorney General cites *Recuenco, supra*, and *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*). Those cases are inapplicable. *Recuenco* involved the failure to instruct on a

12

sentencing factor, and the United States Supreme Court held that in cases involving the failure to instruct on a sentencing factor, like the failure to instruct on an element, harmless error analysis applies. (*Recuenco, supra*, 548 U.S. at pp. 219-220.) Similarly, *Sandoval* applied a harmless error analysis to the failure to submit circumstances in aggravation to the jury. (*Sandoval, supra*, 41 Cal.4th at pp. 838-839.) The error in Tidmore's case goes further than the failure to instruct on an element or sentencing factor. It involves punishing Tidmore for an enhancement that applies to a substantive offense that was never charged and the jury never found him to have committed. This case is analogous to a case in which a defendant is charged with and convicted of theft but sentenced as though he had been charged with and convicted of robbery. We would not affirm the sentence in that case. We similarly decline to affirm the sentence imposed here.

Instead, we vacate the sentence on count two and remand to the trial court for resentencing. On remand, the trial court is instructed to sentence Tidmore for his conviction under section 136.1, subdivision (b)(1). The court may, but is not required to, also impose a gang enhancement under section 186.22, subdivision (b)(1)(B). (See *People v. Neal* (1984) 159 Cal.App.3d 69, 72-74; *People v. Thomas* (1987) 43 Cal.3d 818, 826; see also § 1192.7, subd. (c)(37).) Alternatively, the court may exercise its discretion under section 186.22, subdivision (g) to strike the punishment for the gang enhancement. Lastly, the court may reconsider whether to sentence Tidmore consecutively or concurrently for his conviction under Vehicle Code section 10851. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full

13

resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citations.]"].)

## II. Mental health diversion

Tidmore next argues his convictions must be conditionally reversed because he is entitled to a hearing under section 1001.36, which allows qualifying defendants to participate in pretrial diversion and receive mental health treatment in lieu of prosecution. (§ 1001.36, subd. (c).) Tidmore argues the statute applies to him retroactively. The Attorney General counters the statute does not apply retroactively, and even assuming it does, remand would be futile because the record shows the trial court would not have found Tidmore eligible for diversion.

After briefing was submitted, the California Supreme Court held section 1001.36 applies retroactively to nonfinal cases. (*People v. Frahs* (2020) 9 Cal.5th 618, 630-633 (*Frahs*).) In reaching this conclusion, the Supreme Court explained section 1001.36 offers a potentially ameliorative benefit for criminal defendants who suffer from a qualifying mental disorder, and the text of the statute does not clearly signal a Legislative intent to overcome the *Estrada* inference that the statute applies retroactively to all cases not yet final on appeal. (*Frahs, supra*, 9 Cal.5th at pp. 631-632; *In re Estrada* (1965) 63 Cal.2d 740, 747-748 (*Estrada*).) Consistent with the Supreme Court's holding in *Frahs*, we conclude section 1001.36 applies retroactively to Tidmore.

We now turn to the Attorney General's argument that remand would be futile because the record shows the trial court would not have found Tidmore eligible for mental health

diversion. Applying the principles set forth by the Supreme Court in *Frahs*, we reject this contention. "[A] conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))." (*Frahs*, *supra*, 9 Cal.5th at p. 640.)[12] The record here affirmatively discloses Tidmore may suffer from several qualifying mental disorders, including bipolar disorder, a mood disorder, and possibly others.[13]

We reject the Attorney General's contention that remand would be futile because the court found several aggravating sentencing factors and noted only Tidmore's age as a mitigating factor. (See *Frahs*, *supra*, 9 Cal.5th at p. 639 [rejecting Attorney

12      *Frahs* further explains: "When, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is unlikely to include information pertaining to several eligibility factors, such as whether the defendant consents to diversion (§ 1001.36, subd. (b)(1)(D)), agrees to comply with treatment as a condition of diversion (*id.*, subd. (b)(1)(E)), or has provided the opinion of a qualified mental health expert that the defendant's symptoms would respond to mental health treatment (*id.*, subd. (b)(1)(C))." (*Frahs*, *supra*, 9 Cal.5th at p. 638.)

13      Section 1001.36, subdivision (b)(1)(A) defines the qualifying mental disorders as any "mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia . . . ."

General's argument that remand would be futile because the court found no significant mitigating factors that weighed in favor of striking defendant's prior enhancement, explaining "the trial court could find that the[] criteria for diversion are satisfied even if that court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes." Italics in original.].)

The Attorney General, in arguing remand would be futile, also relies on *People v. Jefferson* (2019) 38 Cal.App.5th 399 (*Jefferson*). *Jefferson* concluded remand was futile because "the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion." (*Id.* at p. 408.) The record in Tidmore's case contains no such indication.

We remand to allow the trial court to determine whether Tidmore suffers from a mental disorder that qualifies him for diversion. If the court determines Tidmore suffers from a qualifying mental disorder, it must then decide whether to grant him pretrial mental health diversion. Like the Supreme Court in *Frahs*, "[w]e express no view regarding whether [Tidmore] will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Frahs, supra*, 9 Cal.5th at p. 625.)

## DISPOSITION

The judgment is conditionally reversed. The case is remanded to the trial court with instructions to determine whether Tidmore is eligible for diversion under section 1001.36 and, if so, to exercise its discretion within the procedures set forth in the statute. If the court does not grant diversion, or if the court grants diversion but later determines the criminal proceedings should be reinstated, the court shall reinstate Tidmore's convictions and resentence him in the manner set forth above. The trial court shall correct the abstract of judgment as necessary upon remand. We also order the clerk of the superior court to forward a certified copy of any corrected abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE

17